# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: } | | |
| CHARLES R. BROWN } | CASE NO. 05-85626-JAC-7 | |
| SSN: XXX-XX-5701 } | | |
| } | CHAPTER 7 | |
| Debtor(s). } | | |
| | | |
| FIRST SOUTHERN BANK, A Banking } | A.P. No. 06-80009-JAC-7 | |
| Organization, } | | |
| Plaintiff(s), } | | |
| v. } | | |
| } | | |
| CHARLES R. BROWN } | | |
| Defendant(s). } | | |

## MEMORANDUM OPINION

This matter comes before the Court on the complaint to determine dischargeability filed by First Southern Bank ("FSB"). FSB alleges that the debtor obtained a renewal loan through false representations and that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Specifically, FSB claims that the debtor intentionally and falsely misrepresented to FSB that the debtor had the title and interest in certain equipment pledged by debtor as collateral to obtain an extension of credit from FSB, that FSB justifiably relied on the debtor's false representations, and that FSB suffered damage when it attempted to recover the collateral. For the reasons indicated below, the Court concludes that the debt owed to FSB was obtained by "false pretenses, a false representation, or actual fraud" and consequently is non-dischargeable pursuant to § 523(a)(2)(A).

### Factual Background

On October 3, 2001, the debtor executed and delivered a promissory note to FSB renewing his existing obligation to repay approximately $70,000.00 debtor had previously borrowed from the

bank. To secure the promissory note, the debtor also signed and delivered to FSB a security agreement. The security agreement lists the following collateral and adopts the UCC-1 financing statement previously recorded and perfected with the Alabama Secretary of State: Caterpillar E120B Excavator, International Backhoe, Caterpillar D5 Dozer, John Deere 555 B Loader, and Allis Chalmers Tractor. The October 3, 2001 promissory note and security agreement renewed an earlier promissory note and security agreement signed and delivered to FSB by the debtor on May 17, 2001.

The debtor subsequently defaulted on the payment of the October 2001 promissory note, and FSB commenced proceedings against the debtor in the Circuit Court of Lauderdale County, Alabama for seizure and recovery of the collateral and collection of the debt. At the seizure hearing, FSB agreed to the sale of two items of the collateral consisting of the Caterpillar excavator and dozer. The proceeds were paid to FSB and FSB released the two pieces of equipment from its security interest. The circuit court ratified the parties' agreement by consent order and reserved jurisdiction of the issues which remained pending. The case was on the active jury docket in circuit court when the debtor filed a petition for relief under Chapter 7 on October 7, 2005.

On January 6, 2006, FSB filed this action to have the debt, in the sum of $65,608.17, excepted from the debtor's Chapter 7 discharge. On May 22, 2006, the matter came before the Court for trial. From the debtor's own testimony and admissions, it is undisputed that at the time the debtor executed the promissory note dated October 3, 2001, as well as at the time he signed the May 17, 2001 promissory note, security agreement, and UCC-1 financing statement, the debtor did not own or possess all of the five piece of equipment pledged as collateral for the debt. Under oath, the debtor admitted that he was indebted to FSB, and that he signed the promissory notes and security agreements dated May 17, 2001 and October 3, 2001. When asked why he signed loan documents

2

listing as collateral equipment that he did not own, the debtor testified, that FSB loan officer Tyler Calhoun, on May 17, 2001, had the debtor sign a "blank" promissory note and other loan documents, and that without the debtor's knowledge or consent someone at FSB later filled in the description of the collateral. Debtor testified that on October 3, 2001 another FSB loan officer, Tom Wissert, again procured debtor's signature on a "blank" promissory note and security agreement and later altered the signed documents by inserting the description of the five pieces of equipment as collateral. The debtor testified that prior to May 17, 2001 he sold three pieces of the equipment listed as collateral for the May 2001 and October 2001 loan renewals. The debtor asserts that he sold the collateral with the consent of the bank.

Loan officer, Tyler Calhoun, testified that the instruments he prepared for the debtor's signature on May 17, 2001 were not prepared or signed in blank and that it is not possible to create such a document using the bank's computer system. Calhoun further testified that the loan documents were complete including the description of the collateral. Calhoun further stated that in order to renew the debtor's loan, he relied on the descriptions of the collateral as they were represented and appeared in the security agreement. Calhoun testified that FSB would not have extended the credit had it known that debtor did not own all of the collateral listed and described in the loan documents.

Loan officer, Tom Wissert, who prepared the October 2001 promissory note and security agreement, testified that when he met with the debtor, both instruments signed by the debtor were complete, including the description of all five pieces of collateral. Wissert testified that it is not possible to produce a blank note on FSB's automated menu driven computer system that generates the loan documents. Wissert testified that he relied on the representation that the debtor owned all

3

Case 06-80009-JAC    Doc 26    Filed 07/24/06    Entered 07/24/06 15:13:42    Desc Main
Document      Page 3 of 10

the equipment appearing on the security agreement and that the loan renewal would not have been made to the debtor had it been known that the debtor did not own or have a right to pledge the equipment as collateral.

On October 17, 2001, FSB sent a letter to the debtor requesting his income tax returns. On the same date, Jack Johnson, president of FSB, initialed an internal bank document entitled Loan Approval Request Report approving the debtor's renewal loan. Johnson reviews and approves all classified loans. The report listed collateral for the loan as "equipment" with value "unknown," the debtor's annual income of $80,000, a statement that the debtor could only pay interest at the time, and a statement that the debtor intended to liquidate the equipment and real estate to payoff the debt by auction. Johnson testified that he did not personally rely on the equipment when he initialed the document. Johnson stated that on October 17, 2001, his role was to approve the loan renewal made by FSB on October 3, 2001. Johnson testified further that it would have been impossible for the debtor to have signed blank loan documents using FSB's menu driven computer software.

## Legal Analysis

FSB has the burden of proving each element of this § 523 action by a preponderance of the evidence.[1] Section 523(a)(2)(A) excepts from discharge any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][2]

---

[1] *Grogan v. Garner*, 498 U.S. 279 (1991).

[2] 11 U.S.C. §523(a)(2)(A).

4

The Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995) held that the "operative terms in §523(a)(2)(A), 'false pretenses, a false representation, or actual fraud," are terms of art that carry with them "the elements that the common law has defined them to include."[3] Under § 523(a)(2)(A), FSB must establish that: (1) debtor made a false representation with intent to deceive FSB; (2) FSB relied on the misrepresentation; (3) the reliance was justified; and (4) FSB sustained a loss as a result of the misrepresentation.[4]

**A. False representation made with intent to deceive.**

Under § 523(a)(2)(A), the false representation giving rise to FSB's claim, that the debtor falsely represented his ownership of collateral, must have been knowingly and fraudulently made to except this debt from discharge.[5] FSB must establish that the debtor made the false misrepresentation with the intent to deceive FSB into renewing or forbearing from collecting the matured May 2001 loan renewal. Intent is a subjective issue requiring the Court to examine the totality of the circumstances, including the recklessness of the debtor's action.[6] The proper focus for determining whether the debtor made a false representation with deceptive intent is whether he intended under the totality of the circumstances to use false pretenses or a false representation for the purpose of obtaining the loan renewal.[7]

---

[3] *Field v. Mans*, 516 U.S. at 69.

[4] *SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278 (11th Cir. 1998).

[5] *Avis Rent A Car Sys., Inc. v. Maxwell (In re Maxwell)*, 334 B.R. 736, 742 (M.D. Fla. 2005).

[6] *Id.; Home Loan Corp. v. Hall (In re Hall)*, 342 B.R. 653, 656 (Bankr. M.D. Fla. 2006).

[7] *SunTrust Bank v. Brandon (In re Brandon),* 297 B.R. 308 (Bankr. S.D. Ga. 2002).

5

The debtor admits under oath to signing the loan documents at issue, but asserts that he signed same in blank. The loan officer who prepared the October 3, 2001 loan renewal documents testified that the documents were complete when the debtor signed same in his presence. Two loan officers and the bank president each testified that it would not be possible to prepare blank loan documents for the debtor's signature using FSB's computer system. When the debtor signed the October 2001 renewal documents, the May 2001 renewal had matured and was in default. The debtor admits that he did not own all five pieces of equipment pledged as collateral when he obtained the October 2001 loan renewal. The debtor testified that he had sold three pieces listed as collateral before he obtained the May 2001 renewal. The debtor asserts that FSB knew he had sold the collateral, but the debtor's assertions are unsupported by the evidence. The credible evidence is that the debtor signed completed loan renewal documents in May of 2001 and, subsequently, in October of 2001, pledging collateral that he no longer owned with deceptive intent to secure the loan renewals. Even if the debtor signed the October 2001 promissory note and security agreement in blank, courts have held intent to deceive may be established for purposes of § 523(a)(2)(A) by the debtor's reckless indifference and disregard of the truth by failing to exercise control over how documents are completed.[8] Signing loan documents without reading same or signing loan documents in blank constitutes a reckless act.[9] After considering the totality of the circumstances, the Court is satisfied that FSB has established by a preponderance of the evidence that the debtor

---

[8] *Home Loan Corp. v. Hall (In re Hall)*, 342 B.R. 653, 656 (Bankr. M.D. Fla. 2006)(finding debtor who executed loan documents in blank that were completed in manner that significantly overstated debtor's income acted with at least reckless disregard for truth in exercising no control over how documents were completed sufficient to satisfy the intent requirement under § 523(a)(2)(A)).

[9] *Id.*

6

intended to induce FSB to renew the promissory note by means of fraud, false pretenses, or false misrepresentation.

### B. Justifiable Reliance

In *Field v. Mans*, 516 U.S. 59 (1995), the Supreme Court determined that the applicable standard of reliance that a creditor must establish under § 523(a)(2)(A) is justifiable reliance rather than the rigid standard of reasonable reliance. In *Vann v. City Bank & Trust Co. (In re Vann)*, 67 F.2d 277 (11th Cir. 1995), the Eleventh Circuit stated that under the justifiable reliance standard the "plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." In *Vann* the bankruptcy court applied the reasonable reliance standard and concluded that the bank would have been better served by demanding an appraisal of certain property and should have made other inquiries of the debtor to ascertain the status of certain properties prior to closing the debtor's loan. The Eleventh Circuit cautioned that courts should not second guess a lender's decision to make a loan, stating:

> Although the bankruptcy court, with hindsight, can see plainly that the bank would have been 'better served by demanding an appraisal' and by making further inquiries of the debtor . . . . the court should not 'second guess a creditor's decision to make a loan' or 'base its decision regarding discharge on whether *it* would have extended the loan.'[10]

In this case, FSB has proven by a preponderance of the evidence that it justifiably relied upon the debtor's false misrepresentation that he owned the collateral pledged to secure the renewal loan. Loan officer, Tyler Calhoun, who extended the first loan renewal in May of 2001, testified that he relied upon the debtor's false representation of continued ownership and stated that FSB would not have extended the note had it known that the debtor no longer owned each item of equipment

---

[10] *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 283 (11th Cir. 1995).

pledged as security. Loan officer, Tom Wissert, who prepared the October 2001 loan renewal, testified that the debtor did not, at any time, disclose to him or advise him that he did not own all of the collateral pledged and listed on the security agreement. Wissert testified that he relied upon the debtor's representations and that the loan renewal would not have been made had FSB known that the debtor did not own or have the right to pledge the equipment. Perhaps, in hindsight FSB would have been better served by making further inquires regarding the debtor's continued ownership of the subject collateral, but the Court will not second guess FSB's decision to renew debtor's loan.

The debtor argues that FSB did not rely upon the collateral for the loan renewal based in part on an internal bank document that listed the value of the collateral as known. The debtor asserts that FSB could not have relied upon the equipment when it did not know the value of the collateral and states that FSB was, instead, willing to extend the loan based on the debtor's $80,000 annual income. Courts have consistently held that partial reliance is all that is necessary under § 523(a)(2).[11] It is entirely expected that FSB would have looked to the debtor's income in addition to the collateral in deciding to renew the troubled loan.

The debtor further asserts that a letter dated October 17, 2001, subsequent to the loan renewal date, in which FSB requested tax information indicates that FSB was not willing to renew the loan without same. The debtor's argument is not supported by the evidence, however, because FSB renewed the debtor's loan on October 3, 2001 prior to requesting the information. The request for the tax information was simply a request for additional information for the bank's records. The debtor further argues that FSB did not rely upon the debtor's misrepresentations based upon the

---

[11] *First Commercial Bank v. Robinson (In re Robsinons)*, 192 B.R. 569 (Bankr. N.D. Ala. 1996).

8

testimony of bank president, Jack Johnson. Johnson testified that he did not rely upon the equipment as collateral to secure the loan when on October 17, 2001, Johnson reviewed and initialed a Loan Approval Request Report. The debt as issue was incurred on October 3, 2001 when FSB renewed the debtor's delinquent loan. The document initial by Johnson on October 17, 2001 is merely an internal bank record that Johnson approved subsequent to the loan renewal.

Justifiable reliance imposes no duty to investigate unless there is an obvious reason or red flags demanding inquiry.[12] Although the debtor's loan was in default, FSB did not have a duty to investigate or demand proof that the debtor continued to own the collateral pledged to secure the October 2001 loan renewal. FSB was entitled to rely upon the debtor's misrepresentations and did so justifiably when it continued to extend credit to the debtor. Based upon the foregoing, the Court is satisfied that FSB has established by a preponderance of the evidence that it justifiably relied upon the debtor's misrepresentations that he owned all of the equipment pledged to secure the loan renewal.

**C. Damages**

Once it is proven that a debtor has obtained a loan renewal by false pretenses, false representation or fraud, "then 'any debt' arising from the refinancing is excepted from discharge."[13] On October 3, 2001, the debtor refinanced the entire debt and obtained the refinancing by false pretenses, false representation or fraud. The entire debt is nondischargeable, including attorney fees as provided for by the promissory note.

---

[12] *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. 308 (Bankr. S.D. Ga. 2002); *First Fed. Bank v. Mulder (In re Mulder)*, 306 B.R. 265 (Bankr. N.D. Iowa 2004)(finding creditor's failure to verify that debtors still owned collateral at time they signed refinancing agreement did not prevent creditor from justifiably relying on debtors' false representation)).

[13] *First Fed. Bank v. Mulder (In re Mulder)*, 306 B.R. 265, 273 (Bankr. N.D. Iowa 2004).

9

A separate order will be entered consistent with this opinion.

Dated: July 24, 2006

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)
  Charles W. Cochran III, attorney for plaintiff(s)
  Rodney Slusher, attorney for defendant(s)
  trustee